The opinion of the eoui t was delivered by
Marr, J.
In May, 1869, tbe defendant corporation issued to William Durbridge a certificate, No. 80, for 80 shares of stock, afterwards *524 reduced to 40. In June, 1869, Durbridge sold this certificate to Samuel Eriedlander ; and signed a blank power of attorney on the back of it,' authorizing the stock to be transferred on the books, “ in the manner and form required by the said company.”
The certificate is as follows :
“ This certifies that William Durbridge is entitled to eighty shares of the capital stock of the Orescent City Live Stock Landing and Slaughter House Company, transferable only on the boolcs of the company by the said William Durbridge or Ids attorney, on surrender of this certificate,” dated 3d May, 1869.
Article six of the charter is as follows :
“ All transfers of stock shall be recorded in the office of said company, in a book of transfer to be kept ior that purpose. The new stockholder binding himself or herself, by the mere fact of recording said transfer, to abide by all the terms, conditions and stipulations of this act, and to any and all the rules, regulations or by-laws, made and adopted in pursuance thereof.”
The transfer thus authorized and required was never made; but it was proven that, on the 17th October, 1873, Harris, acting as agent for Eriedlander, voted on the certificate No. 80 at a corporate election.
In December, 1873, one Job Smith recovered judgment against Durbridge; and caused seizure to be made, under garnishee process, in the hands of the company. The company answered, stating, among other things, that Durbridge had owned 500 shares of common stock, and 330 shares of preferred stock, which the books of the company showed had all been transferred except 80 shares of common stock; and “ that for said 80 shares a certificate, being No. 80 of old issue, was issued to said Durbridge, and whether he holds or has disposed of the the same the company does not know.”
Appended to this answer is a statement of transfers made by and to Durbridge, at different dates, from May, 1869, to May, 1873, showing that the 80 shares still stood in his name on the books.
Such proceedings were had in the suit that judgment was rendered in favor of the seizing creditor against the garnishee; and the stock was sold by the sheriff, under execution, in February, 1874. On the refusal of the company the purchaser took a rule to compel the transfer ; and the company appealed from the judgment making the rule absolute. That judgment was affirmed in May, 1874 ; and in May, 1875, this suit was brought.
The petition alleges plaintiff’s ownership of the stock, in virtue of his purchase from Durbridge; that the company recognized him as owner by allowing him to vote on the same as owner, through his agent Harris, at the election of 17th October, 1873 ; that he has demanded *525 that the transfer be made, and a new certificate be issued to him, on surrendering the original certificate ; and that the company refuses to comply with his demand, and to acknowledge him as owner. He therefore prays for judgment against the company, declaring him to be owner of the stock ; and that a certificate be issued to him, or that the value be paid to him with interest.
The answer sets out the proceedings in the suit of Smith against Durbridge, and the compulsory transfer by final judgment; and that the company has no stock to supply the place of that so transferred.
That the attention of the company was not called to the fact that Harris, as agent for plaintiff, had voted on the 80 shares ; that this vote did not change the result; and that the commissioners of election who received the votes had no power, by receiving or rejecting a vote, to “ make or unmake a stockholder.”
The answer also states that Eriediander never notified the company that he held the stock as owner, and he did not apply to have it transferred until after the sale by the sheriff. That pending the appeal, while the money bid was in the hands of the sheriff, the attorney of plaintiff was informed of the same, and that defendant would not make the transfer until compelled ; and that plaintiff took no steps to protect himself, but allowed defendant to be eoerced and compelled to make the transfer to the purchaser at the sheriff’s sale.
We fail to perceive any'legal or equitable right in plaintiff to recover of defendant. His right would have been clear if the company had made the transfer voluntarily, without the surrender of the outstanding certificate. The company was under no special obligation to plaintiff. He had never given any evidence of his ownership of the certificate except by voting through an agent, which he clearly had no legal right to do. The company was not obliged to recognize any one as the owner of stock except those who were shown to be owners by the transfer book, or by the act of incorporation. During the four 37ears which elapsed from the date of his purchase to the election in October, 1873, he had never asserted his ownership ; and the president and directors cannot be held to knowledge of the ownership of any transferee of a certificate merely because he, through an agent, voted at an election, at which 12,475 shares voted in the affirmative, and 68 in the negative. Harris, the agent, was himself a stockholder. The transfer book showed that Durbridge had sold 75 shares to him on the 17th March, 1871. He was a legal voter ; and there was no occasion to scrutinize the vote cast, where it was so nearly unanimous.
The answer of the company as garnishee was in accordance with the facts. The certificate had been issued to Durbridge, and the stock had stood in his name for four years and a half; and it still stood in his *526 name. In preparing to answer under oath the president could not have been required, he would not have been authorized to recur to the minutes o£ an election. He was bound to consult the stock and transfer books ; and truth and justice compelled him to answer in accordance with these books, the only recognized evidence of ownership of the stock.
We must presume that the president answered truly that he knew nothing more of the certificate than is stated in his answer, and shown by the books, and if he had known, or had remembered, that one of the certificates originally issued to Durbridge, representing less than one-tenth of the shares which he originally owned, was held by plaintiff on the 17th October, that would not have indicated, necessarily, that he held it on the 24th December, when the garnishee process was served. If the president had known, when he filed his answer, that plaintiff held the certificate, he certainly should have informed him then, and have so stated in his answer ; but he would still have been bound to answer that no transfer had been made on the books of the company, as required by the charter and the certificate ; and that the 80 shares still stood in the name of Durbridge.
The argument of plaintiff’s counsel admits the notice through plaintiff’s attorney, pending the appeal on the rule. There was ample time for plaintiff to have protected himself. The judgment which compelled the company to make the transfer was not obligatory on plaintiff; it was res inter alios; and he might, as was done in Smith’s case, 30 An. 1378, have asserted his right, and prevented the payment of the money by the sheriff to the judgment creditor, and th.e transfer of the stock, to the purchaser.
The brief filed by the attorneys of the company, in opposition to the rule, shows that they insisted upon the terms of the charter and the certificate as good cause for not making the transfer until the certificate was produced and surrendered.
We see no reason to doubt the correctness of the views expressed in Smith’s case, 30 An. We think the sheriff cannot validly seize and sell the stock while the certificate is outstanding so that he cannot obtain possession of it. All that he could seize and sell in such case would be the right and interest of the person in whose name the stock stood on the books of the company, without prejudice to the rights of the actual owner aDd holder of the certificate for value, and in good faith. But where a judicial tribunal, of competent jurisdiction, of last resort, after a fair contest, in good faith, by the corporation, orders the stock to be transferred to'the purchaser under such seizure and sale, the corporation cannot be liable to the holder of the certificate, who took no steps to protect himself.
*527 If there have been laches in this case, there has certainly been contributivo fault on the part of the plaintiff. Eor four 'years and a half he allowed his stock to stand in the name of another, without legal notice to the company of his-title and ownership. This may not impair his right as owner; but he cannot require the company to be more vigilant than he is himself, in asserting and maintaining his rights.
The judgment of the district court is therefore affirmed with costs.